IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MILTON THOMAS,

        Appellant,

v.

CITY OF PHILADELPHIA, and THE
SCHOOL DISTRICT OF PHILADELPHIA

        Appellees.

CIVIL ACTION
NO. 21-1725

**OPINION**

**Slomsky, J.**                                                                                                April 10, 2024

**I.      INTRODUCTION**

This case involves a longstanding dispute between a real property owner and the City of Philadelphia ("City").[1] The dispute began on January 6, 2004, when Milton Thomas, the owner, filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code ("Chapter 13"). At the time, Thomas owned three houses in Philadelphia, Pennsylvania. On February 22, 2005, the Bankruptcy Court confirmed his bankruptcy plan, referred to as the Third Amended Chapter 13 Plan, and after Thomas made certain payments, it issued a final discharge injunction on September 3, 2009.

In the ensuing years, disputes arose between the parties involving Thomas's real property. The disputes have woven their way through the United States Bankruptcy Court for the Eastern

---

[1] In his original case before the Bankruptcy Court, Thomas named three Defendants: the City of Philadelphia, the School District of Philadelphia and Chapter 13 Trustee, William C. Miller. In re Thomas, 626 B.R. 804, 807 n.1 (E.D. Pa. Bankr. 2021) ("Thomas VI"). On October 31, 2019, the Bankruptcy Court granted Miller's Motion to Dismiss and he was removed from the case. (Id.) The Bankruptcy Court referred to both the School District of Philadelphia and the City of Philadelphia collectively as "the City". (Id.)

District of Pennsylvania ("Bankruptcy Court"), this Court, the United States Court of Appeals for the Third Circuit and even in an unsuccessful attempt at United States Supreme Court review. What is presently before this Court involves two of Thomas's three properties and the City's involvement in what he perceives as unlawful, post-bankruptcy collection actions against him and his real property, in violation of his Third Amended Chapter 13 Plan, and the discharge injunction. This latest action began after Thomas filed a Motion to hold the City in contempt for violating the discharge injunction. The Bankruptcy Court treated his Motion as an Amended Complaint.

On March 25, 2021, the Bankruptcy Court considered this matter and granted Summary Judgment in favor of the City. On April 9, 2021, Thomas appealed the Bankruptcy Court's decision (Doc. No. 1), and his pro se appeal is now ripe for decision by this Court.

## II.   BACKGROUND

As noted above, the procedural and factual history of this action is lengthy. The Bankruptcy Court has laid out this matter's nearly twenty-year history in detail in its March 25, 2021 Opinion. See In re Thomas 626 B.R. 804, 808-812 (Bankr. E.D. Pa. 2021) ("Thomas IV").[2] However, for purposes of the appeal to this Court, a brief recounting of the facts is necessary.

### A. Thomas's Chapter 13 Bankruptcy Case

On January 6, 2004, Thomas filed for a Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania ("Bankruptcy Court").[3]  (Doc. No. 6-1

---

[2] Due to the lengthy procedural history in this case, the Court will refer to the three relevant Bankruptcy Court decisions as Thomas I, II, III, IV, V and VI. The Bankruptcy Court followed a similar format.

[3] Chapter 13 of the United States Bankruptcy Code allows individuals with regular income to develop a plan to repay all or part of their debts. Chapter 13 requires that the plan be filed with a bankruptcy court, and a bankruptcy court judge must confirm the plan for it to go into effect. See 11 U.S.C. §§ 1321, 1325. If a bankruptcy court declines to confirm the debtor's plan, the debtor may file an amended plan. See § 1324.

at 5.) At the time of filing, he owned three parcels of real property. (Id. at 20.) However, only two are currently at issue:

(1) 1618 South 58th St. ("1618 property")

(2) 1620 South 58th St. ("1620 property")

(See id.) On January 20, 2004, by following the procedures of the Bankruptcy Code, Thomas filed a list of creditors and a schedule of assets and liabilities.[4] (Id. at 6.) In these filings, he stated in "Schedule A" that the current market value of the 1618 and 1620 properties were $4,000 respectively, and that there were secured claims by the City of Philadelphia (the "City") against both for $18,000 each. (Id. at 20.) On the same day, he also filed a proposed Chapter 13 Plan pursuant to 11 U.S.C. §§ 1321 and 1322[5] describing Thomas's proposed payments to his creditors. (Id. at 22.)

---

[4] Appellant filed these documents pursuant to 11 U.S.C § 521(a)(1)(A)-(B), which states in pertinent part:

(a) The debtor shall—

(1) file—

(A) a list of creditors; and
(B) unless the court orders otherwise—

(i)   a schedule of assets and liabilities;
(ii)  a schedule of current income and current expenditures;
(iii) a statement of the debtor's financial affairs. . .

[5] 11 U.S.C. § 1321 states that:

The debtor shall file a plan.

11 U.S.C. § 1322(a) states the requirements of the proposed plan, including that the plan:

(1) shall provide for the submission of all or such portion of future earnings or other future

Between June 17, 2004, and November 10, 2004, Thomas amended his proposed Chapter 13 plan three times. (Id. at 10-13.) On June 17, 2004, he also filed what is called a Cramdown Motion under 11 U.S.C. § 1322(b)(2).[6] (Id. at 10.) In his Motion, he requested the Bankruptcy Court to reduce the amount he owed the City on the 1618 and 1620 properties to the value of the properties. (Id. at 24-25.) He attached proof of valuation that valued 1618 at $6,800 and 1620 at $5,700. (See id. at 25.) He also filed a certification stating that he mailed this Motion to the City at the "Municipal Services Building" in Philadelphia. (Id. at 29.) The City did not respond to the Motion. (See id. at 11.) On August 26, 2004, the Court granted Thomas's Cramdown Motion and reduced the city's secured claims on the two properties to $6,800 on 1618 and $5,700 on 1620. (Id.)

---

    income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

(3) if the plan classifies claims, shall provide the same treatment for each claim within a particular class; and

(4) notwithstanding any other provision of this section, may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507(a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

[6] 11 U.S.C. § 1322(b)(2) states that the proposed bankruptcy plan may:

    [M]odify the rights of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

This Section allows a court to reduce the amount owed to a creditor.

4

As noted, on February 22, 2005, the Bankruptcy Court confirmed Thomas's Third Amended Plan ("Confirmed Chapter 13 Plan"). (Doc. No. 6-1 at 78.) The Confirmed Chapter 13 Plan, pursuant to 11 U.S.C. § 1328(a)[7], required him to make payments to specific creditors to receive a final bankruptcy discharge. (Id.) The Order granting the plan, but not the plan provisions themselves, were served on the City. (See Doc. No. 5 at 5.)

On July 31, 2009, William C. Miller, the Chapter 13 Bankruptcy Trustee,[8] filed a Final Report informing the Bankruptcy Court of the payments Thomas made to the creditors. (Doc. No. 6 at 84-86.) Specifically, the trustee states that he distributed three payments to the City of Philadelphia, including $10,000 to satisfy the City's secured claim against his Ruby Street property,[9] $6,800 to satisfy the City's secured claim against 1618, and $3,500.42 to satisfy an

---

[7] 11 U.S.C. § 1328(a) states in pertinent part:

> Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

11 U.S.C. § 1328(a). The statute then lists lengthy exceptions to § 1328(a).

[8] Pursuant to 11 U.S.C. § 1302(b)(1), a bankruptcy "trustee shall—perform the duties specified in sections. . . 704(a)(9) of this title." Section 704(a)(9) states that a trustee shall: "make a final report and file a final account of the administration of the estate with the court and with the United States trustee." 11. U.S.C. § 704(a)(9).

[9] The Ruby Street Property is the third real property Thomas owned when he filed for bankruptcy. There are no claims relating to this property currently before this Court.

5

unspecified[10] unsecured claim by the City. (Id. at 85.) No distribution was made to satisfy the City's secured claim of $5,700 against 1620. (See id.)

On September 3, 2009, Thomas received the final discharge injunction by the Bankruptcy Court pursuant to 11 U.S.C. § 1328(a). (Doc. No. 6-2 at 2-3.) Nonetheless, after receiving the final discharge injunction, several additional disputes arose relating to Thomas's bankruptcy and his real property. Several of them were resolved, but the current dispute involving the two 58th street properties remain.

### B. Post-Discharge Injunction Actions by the City

On May 3, 2012, Thomas filed a Complaint in the United States District Court of the Eastern District of Pennsylvania against five (5) defendants[11] regarding a pending sheriff's sale of his third property, the Ruby Street property, that is currently not at issue in this case. In re Thomas, 497 B.R. 188, 194 (E.D. Pa. Bankr. 2013) ("Thomas I"). The City was also a defendant in that case, and the district court granted Summary Judgment in favor of the City. Id. The district court found that as a whole, "the Confirmed Plan is not enforceable against the City for lack of notice." Id. at 206. Nonetheless, disputes later arose regarding Thomas' other two properties.

On October 31, 2014, five (5) years after the final discharge injunction, the City filed a Petition in the Court of Common Pleas of Philadelphia County seeking a sheriff sale of the 1620

---

[10] Both the bankruptcy court and this Court were and are challenged to understand what unsecured claim the $3,500.42 payment to the City was for. See Thomas VI, 626 at 818. In any event, Appellant did not make any distributions to the City to satisfy the secured claim of $5,700 against the 1620 property.

[11] The five (5) defendants were the City, the School District of Philadelphia, Wachovia, PAID and ARACOR Search & Abstract Services, Inc. In re Thomas, 497 B.R. 188, 194 (E.D. Pa. Bankr. 2013) ("Thomas I").

property to obtain payment of delinquent real estate taxes for the years 1984 to 2013.[12] (Doc. No. 6-2 at 14-17.) On July 21, 2015, the City sold 1620 S. 58th St. at a sheriff's sale for the purchase price of $10,100. (Id. at 26-27.) As for 1618 S. 58th St, the City has twice unsuccessfully attempted to sell the property through sheriff's sale.[13] Currently, the property remains titled in Thomas' name.

### C. Procedural History

On July 8, 2015, Thomas filed an action in this Court against the City of Philadelphia, alleging that the City violated his Bankruptcy discharge injunction by selling 1620 S. 58th St in a sheriff's sale and by collecting the rents at 1618 S. 58th St. Defendants filed a Motion to Dismiss the Complaint, which was granted on July 7, 2016. See Thomas v. City of Phila., 2016 WL 3625661, at *5 (E.D. Pa. July 7, 2016) ("Thomas II"). Thomas appealed and the Third Circuit vacated the District Court's 2016 decision and remanded the case back to this Court. See Thomas v. City of Phila., 682 F. App'x. 174, 176 (3d Cir. 2017) ("Thomas III").

---

[12] Pursuant to 53 P.S. § 7283, the City filed a petition for a sheriff sale of 1620 to seek repayment of its real estate tax liens against the property. (See Doc. No. 6-2 at 14-15.) 53 P.S. § 7283 states in pertinent part that a court, upon finding that the petitioner satisfied the requirements of 53 P.S. § 7283:

> shall order and decree that the property be sold at a subsequent sheriff's sale at a time to be fixed thereafter by the claimant, clear of all claims, liens, mortgages, ground rents, charges and estates, to the highest bidder at such sale and after payment of the tax or municipal lien the balance of the proceeds realized therefrom, shall be distributed in accordance with the priority of the remaining claims, liens, mortgages, ground rents, charges and estates. . .

[13] The City filed the first of the two (2) proceedings in 2015 at No. 1510T0588 (C.P. Phila.), in which the City sought payment of real estate taxes for the periods 1984 to 2015. The City discontinued this proceeding on April 7, 2016. The City brought the second proceeding in 2018 at No. 1805T0284 (C.P. Phila.), seeking payment of post-petition real estate taxes for the period 2005 to 2017 and for unpaid post-petition water/sewer bills for the period May 2004 to March 2018. This second proceeding was stayed on August 17, 2018.

After remand, this Court addressed the merits and found for Thomas. See Thomas v. City of Phila., 2017 WL 3593334 (E.D. Pa. Aug. 21, 2017) ("Thomas IV"). Then the City appealed and the Third Circuit reversed again, holding that the District Court lacked subject matter jurisdiction to determine whether a violation of the discharge injunction occurred, and that jurisdiction to do so lied exclusively with the Bankruptcy Court. See Thomas v. City of Phila., 759 F. App'x. 110 (3d Cir. 2019) ("Thomas V").

On February 14, 2019, in line with the Third Circuit's decision, this Court entered an Order transferring Thomas's civil action to the Bankruptcy Court wherein the Bankruptcy Court granted summary judgment in favor of the City. See In re Thomas, 626 B.R. 804 (E.D. PA. Bankr. 2021) ("Thomas VI"). The Bankruptcy Court held that the City did not violate the discharge injunction and therefore could not be held in contempt of court. (Id. at 822.) Thomas appealed, and the Bankruptcy Court's decision granting summary judgment in favor of the City is now before this Court.

### D. Thomas's Appeal of the Bankruptcy Court's Decision

On appeal, Thomas contends that the Bankruptcy Court's grant of summary judgment in favor of the City should be reversed. (Doc. No. 5 at 3.) In construing Thomas's pro se appeal liberally, he argues that the City's actions taken against the two 58th Street properties violated the September 3, 2009 final discharge injunction issued by the Bankruptcy Court. The City disagrees, arguing that its lien for unpaid real estate taxes on the 1620 property passed through Thomas's bankruptcy unaffected and that its post-discharge actions on the 1618 property also do not violate the discharge injunction because it did not receive proper notice of any changes to its liens during Thomas's bankruptcy proceeding.

### III. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), a federal district court has appellate jurisdiction over final judgments, orders, and decrees of bankruptcy courts. Universal Minerals, Inc. v. C. A. Hughes & Co., 669 F.2d 98, 100-01 (3d Cir. 1981). According to the Federal Rules of Bankruptcy Procedure, a district court, sitting as an appellate court, "may affirm, modify or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. In evaluating an appeal from the Bankruptcy Court's decision to grant summary judgment, district courts apply a plenary or de novo standard. See In re Rothmund, No. 21-4064, 2022 U.S. Dist. LEXIS 175708, at *5-6 (E.D.Pa. Sept. 28, 2022) (citing In re Tops Appliance City, Inc., 372 F.3d 510, 513 (3d. Cir. 2004)).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 F. App'x at 158. Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (alteration in original) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson, 477 U.S. at 247-249.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party.  Id. at 255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Id. at 250.

## IV.   ANALYSIS

Currently before this Court is Milton Thomas' pro se appeal of the Bankruptcy Court's grant of summary judgment in favor of the City of Philadelphia (the "City").  (Doc. No. 1). Regarding the alleged violation of the discharge injunction, Thomas had sought to hold the City in contempt of court for violating the injunction.  Summary judgment in favor of the City was granted on the Contempt Motion.  This Court will review this appeal de novo.  On appeal, Thomas once again claims that the City's collection actions against the 1618 S. 58th St. and 1620 S. 58th St. properties violated the discharge injunction from his bankruptcy proceedings and therefore the City should be held in contempt.  (See Doc. No. 5 at 5-7.)  The City counters that its actions were not in violation of the discharge injunction.  (See Doc. No. 6 at 14-15.)  For the reasons discussed below, the Court agrees with the City and will affirm the Bankruptcy Court's grant of summary judgment in favor of the City.

### A. The Bankruptcy Court Correctly Granted Summary Judgment Against Thomas on His Motion for Contempt Against the City of Philadelphia

As a preliminary matter, Thomas's claims are construed as a Motion for Contempt because there is not an implied, private right of action for violation of a discharge injunction. Rather, a plaintiff can file a Motion for Contempt against a defendant who allegedly violates a discharge injunction. In re Joubert, 411 F.3d 452 (3d Cir. 2005); see also In re Meyers, 344 B.R. 61, 64-65 (Bankr. E.D. Pa. 2006); Cox v. Zale Delaware, Inc., 239 F.3d 910, 917 (7th Cir. 2001). With a bankruptcy discharge injunction, civil contempt may be granted when three elements have been established:

> (1) a valid order has been entered; (2) the person to be charged with contempt has actual knowledge of the order; and (3) the person has disobeyed the order.

In re Foltz, 324 B.R. 250, 253 (Bankr. M.D. Pa. 2005).

Here, the first two elements are satisfied because the Bankruptcy Court entered a discharge order, and the City was aware of it. The only element in dispute is the third one: whether the City's post-discharge attempts at collecting on the liens filed against the two properties violated the order. In this regard, the City's actions against each of the two properties will be discussed in turn.

#### 1. 1620 S. 58th St.

On appeal, Thomas contends that the Bankruptcy Court erred in finding that the City's sheriff sale on the 1620 South 58th Street property did not violate the discharge injunction. The City disagrees, submitting that the City's unpaid liens that triggered the sheriff sale were not subject to Thomas's 2009 discharge injunction. (Doc. No. 6 at 21.) For reasons discussed below, the Court agrees with the City.[14]

---

[14] As will be discussed Section IV(A)(2), infra, the City also argues that it was not bound by the portions of the discharge injunction relating to the two properties (1618 and 1620) because it did

In bankruptcy law, a lien that is not addressed and treated in some fashion during a bankruptcy case, remains unaffected by the ultimate result of the bankruptcy case. See, e.g., In re Cusato, 485 B.R. 824, 828 (Bankr. E.D. Pa. 2013) (citing authorities, including Lellock v. Prudential Ins. Co. of America, 811 F.2d 186, 189 (3d Cir. 1987)). Rather, the creditor could later act on the lien.

Here, Thomas's Confirmed Chapter 13 Plan stated that the City had secured claims under Class 2 of $5,700 on 1620 S. 58th St. The Confirmed Plan stated that secured creditors in Class 2 would "retain their liens until their allowed claims are paid in full." (Doc. No. 6-1 at 73-74.) On July 31, 2009, the bankruptcy trustee filed a Final Report to the Bankruptcy Court. (Id. at 84-86.) This final report did not include any payment on the City's $5,700 claim secured by 1620 S. 58th St. Thus, by the express terms of the Confirmed Plan, the City's lien on 1620 S. 58th St. was unaffected by Thomas's bankruptcy case and the discharge injunction. Accordingly, the City was permitted to seek payment of the unpaid real estate taxes through a sheriff's sale of 1620. Because there is no genuine dispute of the material facts here regarding the 1620 property, the Bankruptcy Court properly granted summary judgment in favor of the City as to this property.

2. **1618 S. 58th St.**

The analysis regarding the 1618 property is different because the Trustee's Final Report stated that the secured claim against the 1618 property was paid in full.[15] (See Doc. No. 6-1 at

---

not receive actual notice of the Cramdown Motion that decreased its interests in the properties. While the Court will discuss that claim in relation to the 1618 property, the Court need not discuss it in relation to the 1620 property because it is clear from the Final Report that Appellant made no payment to the City to satisfy the liens on the 1620 property. For this reason, the Court need not discuss notice as to the 1620 property.

[15] As previously noted, after the Bankruptcy Court granted the Cramdown Motion, the secured amount owed to the City on the 1618 property was $6,800. (Doc. No. 6-1 at 11.)

85.) Thomas argues, therefore, that when the Bankruptcy Court granted the discharge injunction, it discharged the City's liens against 1618. The City disagrees. While it concedes that the discharge injunction seemingly applies to 1618, it argues that it is not bound by the injunction because it did not receive notice of the filing of the Cramdown Motion that reduced its lien from $18,000 to $6,800. The Cramdown Motion was served on the City at its most general address, the Municipal Services Building. It was not served at the City's Law Department. Moreover, the City did not receive notice of the entry of the Cramdown Order. The failure to give notice would violate the City's due process rights and relieve it from the bar of the injunction.

Courts will not enforce a Chapter 13 discharge injunction if doing so denies a party its due process rights. In re Mansaray-Ruffin, 530 F.3d 230, 238-39 (3d Cir. 2008). In the bankruptcy context, due process requires that (1) a creditor receive actual notice of a plan's proposed treatment of its interests and (2) be given an opportunity to object. Id. Courts have consistently held that a failure to provide notice of a change in a creditor's interest violates due process.

In In re Losada, a debtor provided a secured creditor with the debtor's initial chapter 13 plan. 557 B.R. 244, 249 (Bankr. S.D. Fla. 2016). The initial plan indicated that the debtors would file a motion to value the collateral securing the creditor's claim but did not specify an alleged value of the collateral. Id. at 250. A subsequent amended plan, that was not served on the creditor, specified a value for the collateral and was confirmed by the bankruptcy court. Id. On the creditor's Motion to Reopen the bankruptcy case, the bankruptcy court held that creditor's due process rights were violated by the lack of notice of the subsequent amended plan because the creditors did not receive actual notice of the change in value of the collateral. Id. at 250; 248 n.10.

Similarly, in In re Erdmann, a debtor filed a plan modification that reclassified a secured claim as wholly unsecured. The filing of this modified plan triggered automatic email notices to

the United States Bankruptcy Trustee, the case trustee, and all parties who filed documents in the case. 446 B.R. 861, 866 (Bankr. N.D. Ill. 2011). For technical reasons, the affected secured creditor did not receive this automatic notice. Id. One (1) day after the modified plan was approved, the Bankruptcy Noticing Center mailed out written notices of the modified plan to all creditors, including the secured creditor whose claim was reclassified. Id. The secured creditor filed a motion to vacate the confirmation order. In granting the motion to vacate, the court observed that "[w]ithout the opportunity to object ... the confirmation order cannot bind the creditor as to that particular term." Id.

Further, courts have also held that mailing of proposed plan provisions prior to confirmation does not satisfy "actual knowledge." See In re Pongco, 614 B.R. 690, 696-97 (Bankr. D. Alaska 2019) (evidence of mailing did not show that the creditor had actual knowledge of the plan's provisions prior to confirmation); In re Gonzalez, 2013 WL 1197666 (Bankr. D.N.J. Mar. 25, 2013) (finding a due process violation where the debtor served the plan on a commercial creditor, by regular mail to a non-officer, because the notice was not reasonably calculated to apprise the creditor of the hearing in time to respond); see also Jacobo v. BAC Home Loans Servicing, LP, 477 B.R. 533, 540-41 (D.N.J. 2012) (same); cf. In re Menden, 2011 WL 4433621 (Bankr. N.D. Ohio 2011) (failure to serve an amended plan on creditor in accord with Bankruptcy Rules did not violate the creditor's due process rights where the creditor's attorney received electronic notice of the amended plan).

Here, Thomas did not satisfy the due process rights of the City because the City did not have actual knowledge of the Cramdown Motion that changed the value of the collateral, and it was not given a chance to object. The Cramdown Motion was served on the City at the Municipal Services Building which, as noted, was at most its general address. While he did provide the City

14

with certain documents related to his bankruptcy proceedings, he did not properly serve the City with the Cramdown Motion nor any documents that would alert the City that the amount of its lien on 1620 was reduced from $18,000 to $6,800. Although it is undisputed that Thomas only served the City with the notice of a scheduled 341 hearing, notice of the Chapter 13 Plan Confirmation Hearing and the Order Confirming the Chapter 13 Plan (See Doc. No. 5 at 5; Thomas VI, 626 B.R. at 820), the City was also never served with Thomas' Chapter 13 Plan. Rather, it was served with the Order Confirming Thomas' Chapter 13 Plan (Doc. No. 6-1 at 78), but this signed Order did not contain any of the Plan's provisions. (See id.; Doc. No. 5 at 5.) The Order only alerted the City that Thomas would receive a discharge injunction when he paid "$445.00 for 49 months for a total plan payment of $23,355.00." (Doc. No. 6-1 at 78.) It did not include any of the information related to what payments each creditor would receive, which is present in the Chapter 13 Plan, "Schedule D", and in the Cramdown Motion. (Id.) And, as noted, these were not properly served.

This Court agrees with the analysis of the Bankruptcy Court on the matter of notice. In this regard, as noted by the Bankruptcy Court in its Opinion granting the City's Motion for Summary Judgement:

> Taking all of these factors into account, I conclude that whatever broad notice the City possessed was insufficient to satisfy the City's due process rights.
>
> I have not found any reported case in which a bankruptcy court has held that general knowledge of the existence of a bankruptcy case, or notice of the confirmation hearing, is a permissible substitute for service of the chapter 13 plan (i.e., actual notice that a debtor intends to alter a secured creditor's rights in the plan). In the circumstances here, where the secured creditor was known to the debtor and readily available for service, such a finding would be particularly inappropriate.
>
> To hold otherwise would be to create an affirmative monitoring duty on a secured creditor, whose in rem property rights ordinarily pass through bankruptcy unaffected — rather than compelling a debtor to take active steps to provide notice to a secured creditor whose lien rights the debtor seeks to impair in the bankruptcy case. Finding constructive notice adequate here would functionally impose a burden on a secured creditor to monitor the docket for any unserved filings that

may affect its interests. No case has even hinted that such a holding is warranted. Indeed, arguably, the burden on the debtor to satisfy due process concerns is heightened when secured claims are involved because a creditor's liens usually pass through bankruptcy. See Nomellini, 577 B.R. at 856-57.

Thomas VI, 626 B.R. at 821.

Thus, because and again there is no genuine dispute of material facts here regarding the 1618 property, the City is not bound by the discharge injunction relating to this property because it was not given proper notice of the Cramdown Motion and Third Amended Plan that altered its stake in the property.

Finally, the Bankruptcy Court came to the same conclusion and additionally held that:

> Assuming, arguendo, that the City was bound by the Confirmed Plan and, consequently its collection activities violated the discharge injunction, the City still is not subject to being held in contempt. This is because City had an objectively reasonable basis for concluding that its collection activities were lawful based on this court's holding in Thomas I. This insulates the City from liability under legal standard enunciated in Taggart v. Lorenzen.

Thomas VI, 626 B.R. at 821 (emphasis in original).  This Court agrees.

In Taggart v. Lorenzen, the Supreme Court imported the "fair ground of doubt" standard in contempt determinations for discharge injunctions.  139 S. Ct. 1795, 1799 (2019).  Following Taggart, defendants may be held in contempt:

> [I]f there is no fair ground of doubt as to whether the order barred the creditor's conduct.  In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful.

Id.  In sum, civil contempt "may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statues that govern its scope." Id.

Here, the City's conduct was objectively reasonable. In 2013, in a proceeding involving Thomas' third or Ruby Street property that is not currently at issue, the Bankruptcy Court held that "the Confirmed Plan is not enforceable against the City for Lack of Notice." In re Thomas, 497 B.R. 188, 191 (E.D. Pa. Bankr. 2013) ("Thomas I"). After this holding, it was therefore objectively reasonable that the City sought to collect on its liens. As the Bankruptcy Court noted:

> It is hard to imagine a more objectively reasonable basis for the City's conduct than a prior judicial determination that its lien rights were not impaired by the Debtor's bankruptcy. While the Court of Appeals later concluded that this court's findings were not binding on the Debtor for purposes of res judicata, the Court of Appeals did not decide the merits of the issue. The court did not hold that the Confirmed Plan was binding on the City; it held only that the Debtor had not yet had a full opportunity to be heard on the issue.
>
> The fact is that City had a final judicial determination that supported its position that it was not bound by the Confirmed Plan. And, even after the Court of Appeals decision, the City had an objectively reasonable basis for believing that it was entitled to enforce its liens against 1618 S. 58th without violating the Debtor's bankruptcy rights. Indeed, now that the Debtor has had his opportunity to be heard on the issue, I have upheld the City's position that it was not bound by the Confirmed Plan.

Thomas VI, 626 B.R. at 821-22. Thus, while this matter regarding the 1618 property is resolved by this Court's determination that the City is not bound by the discharge injunction, the City would also cannot be held in contempt because the City's actions were objectively reasonable to satisfy the standard set forth in Taggert v. Lorenzen, 139 S. Ct. 1795, 1799 (2019).

V.    **CONCLUSION**

For the foregoing reasons, the Court will affirm the Bankruptcy Court's Order Granting Summary Judgment in favor of the City of Philadelphia. An appropriate Order follows.